CASE 44—ACTION ON NOTE—Nov. 17.

# Smith v. First National Bank of London.

APPEAL FROM LAUREL CIRCUIT COURT.

SURETIES—FRAUD AS A DEFENSE.—In an action against a surety upon a note given as a novation of a former note of the principal a defense of fraudulent concealment of material facts in the obtainment of the surety's signature is not good unless it show that the creditor was present and was guilty of either misrepresentation or concealment.

J. W. ALCORN IN A BRIEF AND SUPPLEMENTAL BRIEF FOR APPELLANT.

1. The principal in the debt and the creditor agreed to and did intentionally conceal from the surety at the time he signed the note the fact that all of the property of the principal was about

to be and would be forthwith properly attached for other debts of the principal. This was such fraud as invalidated the contract of suretyship. Story's Eq. Jur., secs. 222, 324; Pomeroy's Eq. Jur., secs. 900 to 907 inclusive; DeColyar on Sureties and Guarantors, p. 361.

2. The relation of the creditor to the surety is fiduciary in its nature and requires the utmost good faith. For bad faith by the creditor the surety is discharged. Burks v. Wonterline, 6 Bush, 20; Mount v. Tappey, 7 Bush, 617; Graves v. Lebanon Bank, 10 Bush, 28; Aaron v. Mendel, '78 Ky., 427; First Nat. Bk. of Stanford v Mattingly, 92 Ky., 650; Pomeroy's Eq. Jur., secs. 964-965.

3. To obtain the benefit of the doctrine of estoppel the party must be free of fraud. Pomeroy's Eq., sec. 813; Clark Thread Co. v. Armitage, 67 Fed. Rep., 896; Norwalk v. Ireland, 68 Conn., 1; Thomson v. Thomson, 93 Ky., 435.

4. There can be no ratification of a fraud unless the party defrauded has, before the act relied on as a ratification, had full knowledge of the fraud, and has acted deliberately and with intention to ratify. Pomeroy's Eq. Jur., sec. 964.

A. K. COOK IN A BRIEF AND SUPPLEMENTAL BRIEF FOR APPELLEE. (H. C. EVERSOLE AND C. R. BROCK OF COUNSEL.)

1. There could have been no concealment by appellee, inasmuch as appellant afforded it no opportunity to disclose. Magee v. Manhattan L. Ins. Co., 92 U. S., 93; Burks v. Wonterline, 6 Bush, 20; Graves v. Lebanon National Bank, 10 Bush, 23; Franklin Bank v. Cooper, 36 Me., 179.

2. There was no duty resting on appellee to hunt up appellant in order to have such opportunity. Cases cited in point 1, and 24 Am. & Eng. Ency. of Law, 763; Western N. Y. Life Ins. Co. v. Clinton, 66 N. Y., 326; Magee v. M. L. Ins. Co., 92 U. S., 700; Burks v. Wonterline, 6 Bush, 20.

3. Even though the opportunity had existed, it was not the duty of appellee to have voluntarily informed appellant of the insolvency of Marlow. Ham v. Greve, 34 Ind., 18; Monroe v. Gifford, 32 N. W. R., 669; Roper v. Sangamon Lodge, 91 Ill., 518; Farmers and Drovers National Bank v. Braden, 22 Atl. Rep., 1045; Magee v. M. L. Ins. Co., 92 U. S., 700.

4. Even though the opportunity for disclosure had existed, it was not the duty of appellee to have voluntarily informed appellant that the note he was about to sign as surety would be used in paying off the Eversole note, and thereby removing the mortgage from Marlow's homestead; nor was such use of the note

sued on any fraud upon appellant in any event. Hamilton v. Watson, 12 C. & F., 109; Magee v. M. L. Ins. Co., 92 U. S., 700.

5. Even though the opportunity for disclosure had existed, the appellee could have remained silent without being guilty of fraudulent concealment, inasmuch as there is no proof that appellee knew that appellant was ignorant of any fact that it knew Franklin Bank v. Cooper, 36 Me., 179; Ham v. Greve, 34 Ind., 18; Monroe v. Gifford, 32 N. W. R., 669; Magee v. M. L. Ins. Co., 92 U. S., 700.

6. Any disclosure appellee could have made would not have deterred appellant from becoming Marlow's surety on the note, and hence he can not be heard to complain of the want of such disclosure. 8 Am. & Eng. Ency. of L., 636-7, and cases cited; McAleer v. Horsey, 35 Md., 439; 43 N. Y. Supp., 909; Kerr on Fraud and Mistake, 94.

7. Appellant is estopped, alike by acquiescence and by ratification, to plead fraudulent concealment. Pomeroy's Eq. Jur., secs. 916, 964, 965.

8. One who has made a choice between two inconsistent or alternative rights or benefits is estopped to assert or claim the other. The appellant, with knowledge of every fact affecting his liability on the note in contest, instituted suit against Marlow for indemnity as surety on the note in contest, and, two months thereafter, accepted from Marlow $100 and a mortgage on the Fain property as a consideration for relinquishing his claim for indemnity asserted in said proceedings, and for which consideration appellant undertook to Marlow to pay the note in contest. 7 Am. & Eng. Ency. of Law (1st. ed.), text, at p. 32 and note thereto and notes at page 22.

JUDGE PAYNTER DELIVERED THE OPINION OF THE COURT.

The appellee, First National Bank of London, held a note of J. H. Marlow for the sum of $620, upon which H. C. Eversole was surety, and, to indemnify him against loss by reason of his suretyship, Marlow gave him a mortgage upon a house and lot in London. Before the maturity of the note, Jackson, cashier of the appellee bank, discovered what he supposed to be fraudulent conduct upon the part of Marlow in disposing of part of his stock of goods. The bank held several notes of Marlow, aggregating something over thirteen hundred dollars, up-

on which there were different indorsers. Vincent A. Boreing had a claim against him of $700, which seems to have been in Jackson's hands for collection. Upon the night of the discovery which Jackson made with reference to the disposition by Marlow of part of his stock of goods, Marlow, Eversole, Jackson and Ewell met at the office of Judge Brown, and all recognized that there was a crisis in the business affairs of Marlow, who was informed that an attachment would be sued out against his property. In the course of the conversation Marlow proposed to execute a note, with good security, for $620, to the appellee, and thus pay the note for like amount upon which Eversole was surety, but it does not appear that any name was suggested as surety on the note. Jackson, representing the bank, agreed to accept such a note, and Marlow at once approached Smith, and procured his signature to a note for $620, which was delivered to Jackson as cashier, who surrendered the note for $620 upon which Eversole was surety, and for which Marlow's homestead was liable by reason of the mortgage which he had executed to Eversole to indemnify him against loss. Immediately suits were filed, and Marlow's property was attached, but it was insufficient to pay his debts.

It is contended that Jackson knew of Marlow's financial condition; that his property was to be immediately seized under attachment to pay his debts; that he conspired with Marlow to procure Smith's signature to the note as surety, and thus enable him to release his homestead from the payment of the debt which he owed the bank; that he was thereby guilty of actual fraud; that, in view of the fact that the relationship of a creditor and surety is fiduciary in character, Jackson acted in bad faith with him, and the obligation is void; that he

concealed from Smith the financial condition of Marlow, thus inducing him to sign the note, when, if he had advised him of the real condition of Marlow's financial affairs, he would not have signed it.

Jackson and Smith were brothers-in-law, and it is difficult to understand why Jackson, under the circumstances, accepted the note which Smith signed; still the liability of Smith must be determined from the law. Jackson did not know, at the time Marlow started to procure surety on the note which Jackson agreed to accept, that his intention was to have Smith sign it. Jackson was not present when Smith signed the note; neither was Smith present when Marlow delivered it to Jackson. So they had no conversation in regard to the matter at the time the note was signed by Smith, or when it was delivered to Jackson. The contract of suretyship imports good faith and confidence between the parties in regard to the transaction. Concealment of material facts, or expressed or implied misrepresentations of such facts, will furnish sufficient grounds to invalidate a contract. Jackson did not procure Smith's signature to the note, and, as we have said, was not present when he signed it; therefore it can not be said that he was guilty of either misrepresentation or concealment.

In Burks v. Wonterline, 6 Bush, 24, the court said: "To maintain the general allegation of concealment or fraud, it was necessary to allege that the obligee either procured the surety's signature, or was present when it was made, and then misrepresented or concealed the essential facts which she ought to have disclosed truly."

The court in Magee, et al., v. Manhattan Life Insurance Co., 92 United States, 93, had under consideration the question of the sufficiency of a pleading, and

in stating what were sufficient averments stated the rule substantially as announced in Burks v. Wonterline, using the following language, to-wit: "To render the general allegation of concealment sufficient in a pleading, it is necessary also to aver that the creditor either procured the surety's signature, or was present when the instrument was executed, and then misrepresented or concealed essential facts which should have been disclosed; otherwise, the allegation of fraud is only the pleader's deduction."

The fact that Marlow used the note which Smith signed for the purpose of releasing the claim against his homestead does not affect Smith's liability on the note. If there was no such concealment or misrepresentation as would render invalid the note, then the uses to which the proceeds of the note were applied does not, nor could it, affect the question of Smith's liability.

The judgment is affirmed.